**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0375n.06

**No. 10-3907**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Apr 06, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

     **Plaintiff-Appellee,**

v.

**DEMETRIUS WILLIAMS,**

     **Defendant-Appellant.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

_____ /

**BEFORE:**    **BATCHELDER, Chief Judge; CLAY and GILMAN, Circuit Judges.**

**CLAY, Circuit Judge.** Defendant Demetrius Williams appeals from separate orders of the district court denying his motion to suppress and convicting him of a nonexistent federal crime with respect to Count One. Williams was indicted on two counts, possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count One), and possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Two). Williams moved to suppress evidence related to his arrest, which the district court denied. He then entered a conditional guilty plea to both counts, but preserved his right to appeal the denial of his motion to suppress. For the reasons that follow, we **AFFIRM** the district court's order denying the motion to suppress but **VACATE** Williams' conviction with respect to Count One and **REMAND** for further proceedings.

**BACKGROUND**

On September 5, 2007, the Cincinnati Police Department's District Four Violent Crimes Squad executed undercover "drug buy-busts" in the Walnut Hills area of Cincinnati, known for its high level of crime. The undercover operation involved officers, dressed in plain clothes, who bought narcotics from individuals and then arrested them.

Cincinnati Police Officer Mark Longworth was a part of the undercover operation. Prior to his participation in the buy-busts, he received several $20 bills for use in the operation, and he made copies of the bills. A confidential informant picked up Officer Longworth in an unmarked car, and they drove together down Concord Street. Williams flagged their car down, approached Officer Longworth on the passenger side and solicited drug sales. Officer Longworth requested $20 worth of crack cocaine. Williams handed him a small rock of cocaine, and Officer Longworth handed Williams one of the $20 bills. Once the transaction was complete, the informant and Officer Longworth drove away. They noted that Williams continued walking southbound on Concord Street. (*Id.*)

Officer Longworth immediately broadcast a description of Williams. He described Williams' physique, gender, race, and clothing, including his white t-shirt, long blue jeans, and green tennis shoes. Officer Longworth also stated that Williams was walking southbound on Concord.

Cincinnati Police Officers Derrick Edwards and Ken Grubbs were on duty at the time and received Longworth's description of Williams. They drove along Concord in an unmarked car and spotted Williams, who matched the description given by Longworth, walking southbound on Concord. Approximately one and a half minutes elapsed between the description broadcast and the

officers' sighting. Officer Edwards exited his vehicle and identified himself to Williams as a police officer. Williams then turned northbound on Concord and ran. He quickly turned eastbound on the next street. Officer Edwards chased Williams on foot and continued to shout "stop running" and "police."

Once Officer Edwards turned the corner and began to run eastbound, he "observed Mr. Williams reaching in his waistband while he was facing" him. Officer Edwards altered his direction so that Williams would not see him. Officer Edwards "saw him reach in his waistband and pull out a dark object. It appeared to be some kind of handgun . . . ." Officer Edwards then pulled out his own gun and continued to observe Williams from a ten to fifteen foot distance. Williams dropped the item to the ground, and Officer Edwards "heard metal hit concrete." Williams then ran eastbound, and Officer Edwards re-holstered his weapon and continued to chase him. Officer Edwards lost Williams when Williams ran through a residential yard, and Officer Edwards' attempt to taser him failed. Officer Edwards then stopped chasing Williams and broadcast the direction that Williams was running. He returned to the place where Williams dropped the item about a minute earlier and found a loaded Llama 9mm pistol.

Another Officer, Officer Asbury, caught Williams. Officer Grubbs assisted in the arrest and extracted a $20 bill from Williams' pocket as well as a baggie of crack cocaine. It was later discovered that the serial number on the $20 bill matched the serial number on one of the bills photocopied by Officer Longworth prior to the buy-bust. The $20 bill was returned to the police department and was not offered as evidence at the suppression hearing.

Officer Longworth also arrived at the arrest scene and confirmed that Williams was the individual from whom he purchased the crack cocaine.

In January 2008, a federal grand jury indicted Williams on four counts. On April 2, 2008, Williams filed a *pro se* motion to suppress all evidence and police statements against him. Williams was appointed counsel, and counsel filed a new motion to suppress on August 7, 2008. The district court denied both motions on September 4, 2008.

On September 26, 2008, Williams filed a plea agreement, and three days later, the government filed a superseding information charging Williams with only two counts: possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 1), and possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count 2).

Williams was appointed new counsel and filed a motion to reconsider the district court's order denying the motion to suppress. On December 16, 2008, the district court denied the motion to reconsider.

On February 12, 2009, Williams filed a conditional plea agreement, pleading guilty to the two counts in the superseding information but preserving his right to appeal the denial of his motion to suppress.[1] On July 27, 2010, the district court entered judgment against Williams and sentenced

---

[1] The superseding information charged Williams with "possession of a firearm in furtherance of a drug trafficking crime." The plea agreement and judgment stated the crime as "possession of a firearm during and in relation to a drug trafficking offense." None of the parties or the court noticed the change in language until the government raised the issue on appeal.

him to 120 months of imprisonment (60 months on each count, running consecutively) and five years of supervised release (five years on each count, running concurrently). Williams timely appealed.

## DISCUSSION

### A. Motion to Suppress

In considering a denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008). "[T]he district court's application of the law to the facts, such as a finding of probable cause, is reviewed *de novo*." *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994) (citing *United States v. Thomas*, 11 F.3d 620, 627 (6th Cir. 1993)). "Where a district court denies a motion to suppress, this court considers the evidence in the light most favorable to the government." *United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2010) (citing *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc)) (internal alterations and quotation marks omitted).

### 1. Legal Framework

The Fourth Amendment guarantees individuals the right to be free from "unreasonable searches and seizures" of "their persons, houses, papers and effects." U.S. Const. amend. IV. Searches and seizures must be based on "probable cause, supported by Oath or affirmation." *Id.* The Supreme Court has interpreted the Fourth Amendment to require police officers to obtain search and arrest warrants, supported by affidavits that offer probable cause. *See United States v. United States Dist. Ct.*, 407 U.S. 297, 315–16 (1972); *Ker v. California*, 374 U.S. 23, 34 (1963). Of course, the warrant requirement is subject to "a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).

5

"The Supreme Court has identified three types of reasonable, and thus permissible, warrantless encounters between the police and citizens: (1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon 'reasonable suspicion'; and (3) arrests which must be based upon 'probable cause.'" *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (citing *United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004)). This third circumstance requires that an arresting officer has probable cause to believe that the arrestee has committed or is committing a crime. *Pearce*, 531 F.3d at 380 (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152. If an officer arrests an individual without probable cause, the evidence obtained in the course of the unconstitutional arrest is inadmissible. *Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Pearce*, 531 F.3d at 381.

We have held that if officers have reasonable suspicion that an individual has committed or is committing a crime, and when approached by officers the individual flees or attempts to flee, the reasonable suspicion "ripens" into probable cause. *United States v. Dotson*, 49 F.3d 227, 230–31 (6th Cir. 1995) (providing cases); *see United States v. Moore*, 390 F. App'x 503, 508–10 (6th Cir. 2010); *United States v. McCoy*, 155 F. App'x 199, 201–02 (6th Cir. 2005) (holding that a matching description plus flight created probable cause to support the arrest); *Weaver v. Shadoan*, 340 F.3d

398, 409–10 (6th Cir. 2003) (noting that "headlong flight from police presence is the consummate act of evasion and suggestive of wrongdoing"); *United States v. Bowden*, No. 96-5403, 1997 U.S. App. LEXIS 19153, at *9 (6th Cir. July 18, 1997) (holding that "reasonable suspicion blossomed into probable cause to arrest" when the defendant who matched a radioed description fled officers after being confronted).

### 2.    Application

Williams argues that the officers did not have probable cause to arrest him. Williams also asserts two bases for why the officers lacked probable cause: (1) none of the testifying officers saw Williams with a gun, and (2) the government failed to produce the twenty dollar bill used as "buy-money" in the drug transaction that connected Williams to the crime.

Testimony from the officers at the suppression hearing showed that Williams matched the description of the drug seller given by Officer Longworth immediately after Officer Longworth bought cocaine from him; the description included Williams' build, race, gender, and clothing, including his white tee-shirt, long blue jeans, and tennis shoes with green coloring. Williams was also walking southbound on Concord, the street and direction that Officer Longworth stated that he would be walking. At this point a prudent officer would have reasonable suspicion that Williams was the drug seller described by Officer Longworth.

Once Officer Edwards approached Williams and informed him that he was a police officer, Williams fled. Williams continued to run even after being chased and being told to stop multiple times. The officers' reasonable suspicion ripened into probable cause once Williams fled. *See*

*Dotson*, 49 F.3d at 230–31; *McCoy*, 155 F. App'x at 201–02; *Bowden*, 1997 U.S. App. LEXIS 19153, at *9.

Williams' arguments against probable cause are not well taken. First, although none of the officers could confirm that Williams had a gun, Officer Edwards saw him discard an object that he believed to be a gun. In any event, seeing Williams with a gun was not a prerequisite for probable cause, and there was sufficient evidence supporting probable cause to arrest Williams even without his possession of a weapon. Second, Williams' argument regarding the government's inability to produce the twenty-dollar bill to connect him to the crime is irrelevant to whether or not the officers had probable cause to arrest Williams in the first instance, because the bill was found only after Williams was arrested and was not relied upon by the officers as a basis for probable cause for the arrest.

We therefore find that the district court did not err in denying the motion to suppress, because Williams' arrest was supported by probable cause.

**B.      Count One Firearm Offense**

We generally review *de novo* a claim that an indictment is insufficient or was impermissibly amended or varied. *United States v. Slayton*, 366 F. App'x 650, 656 (6th Cir. 2010); *United States v. Combs*, 369 F.3d 925, 934 (6th Cir. 2004). This includes situations where an indictment was sufficient and correctly charged the defendant with a crime, but later instructions or the judgment itself reflects an offense different from that in the indictment. *Combs*, 369 F.3d at 935–36. However, because this argument was not raised before the district court, we review it for plain error. *United States v. Hunter*, 558 F.3d 495, 501 (6th Cir. 2009).

On appeal, the parties agree that while the superseding information sufficiently charged Williams with a federal crime under Count One, the plea agreement and the district court judgment incorrectly recorded the language of Count One and, in doing so, failed to convict Williams of a federal crime with respect to Count One. The parties further agree that the conviction under Count One should be vacated and remanded for further proceedings.

We concur that the plea agreement and the district court judgment inadvertently modified the language used in Count One of the superseding information. The superseding information charged Williams with violating 18 U.S.C. § 924(c)(1)(A). Section 924(c)(1)(A) makes it a crime to (1) use or carry a firearm during and in relation to a drug trafficking crime or (2) possess a firearm in furtherance of a drug trafficking crime. These offenses are separate and distinct. *See Combs*, 369 F.3d at 933–34. The superseding information charged Williams with "possession of a firearm in furtherance of a drug trafficking crime," in violation of the second clause of § 924(c)(1)(A). The plea agreement and judgment, however, convicted Williams of "possession of a firearm during and in relation to a drug trafficking offense." That wording results from an impermissible combination of the language of the first and second clauses of § 924(c)(1)(A). *See Combs*, 369 F.3d at 933–34 (noting that "possession of a firearm during and in relation to a drug trafficking crime" is not a chargeable offense).

We find that the district court improperly amended the superseding information when it "literally altered" the superseding information and sentenced Williams for a nonexistent crime. *See Hunter*, 558 F.3d at 502; *United States v. Castano*, 543 F.3d 826, 837 (6th Cir. 2008); *Combs*, 369 F.3d at 935–36. This amendment is *per se* prejudicial to Williams and constitutes plain error by the

9

district court. *See Hunter*, 558 F.3d at 502; *Combs*, 369 F.3d at 936. The conviction under Count One must be vacated and remanded to the district court for further proceedings.

## CONCLUSION

For the reasons discussed above, this Court **AFFIRMS** the district court's order denying the motion to suppress but **VACATES** Count One of the district court judgment and **REMANDS** for further proceedings.