ROGERS, Circuit Judge,
dissenting.
Though it is with some regret, I am compelled to dissent.
The lead opinion’s analysis has the same effect as our recently-vacated opinion in United States v. Blewett, 719 F.3d 482 (6th Cir.2013), although for quite different reasons. Under both analyses, any sentence governed by a statutory minimum changed by the Fair Sentencing Act (FSA), no matter how far back, could be the subject of a § 3582 motion. Indeed, our upcoming en banc consideration of Blewett could be resolved in the alternative on the basis of the lead opinion’s reasoning, if accepted by the en banc court.
In the meantime, however, we are bound by this court’s published panel precedent in United States v. Hammond, 712 F.3d 333 (6th Cir.2013). In Hammond, this court in a § 3582 reduction case flatly held that “the FSA is not retroactive to defendants like Hammond ... who were originally sentenced before its effective date.” Id. at 336. The lead opinion’s analysis in the instant case is unfortunately squarely foreclosed by the holding in Hammond, which is a binding precedent. No reason is given for why our panel can overrule Hammond.
It cannot be argued that Hammond is distinguishable because Prisoner received a substantial-assistance departure while Hammond did not. This is because Prisoner’s substantial-assistance departure was in no respect affected by anything changed by the FSA. The only way in which the FSA arguably affects Prisoner’s sentence is in the calculation of the sentence prior to the application of the departure, on the theory that the FSA would no longer apply the statutory minimum that drove the pre-departure guideline range.
Prisoner pled guilty to possessing 109 grams of cocaine base, which under the crack-cocaine guidelines at § 2D 1.1 of the 2006 Guidelines produced an offense level of 32. This offense level was reduced by 3 to account for Prisoner’s acceptance of responsibility to produce a revised offense level of 29. This revised offense level combined with his criminal history category of V to produce a guideline range of 140 to 175 months of imprisonment. Under pre-FSA 21 U.S.C. § 841, Prisoner was subject to a statutory minimum of 240 months’ imprisonment. The court granted the Government’s motion for a substantial-assistance reduction. It appears from the Presentence Investigation Report and the sentencing transcript that the court quantified the value of Prisoner’s assistance by granting a 2-level departure from offense level 33, the first offense level that intersects with Prisoner’s statutory minimum and criminal history category. The court then granted a further 3-level reduction to account for Prisoner’s acceptance of responsibility, producing a final offense level of 28 (33-2-3). This produced a guidelines range of 130 to 162 months, and the district court sentenced Prisoner to the bottom of this range: 130 months. Once the district court increased Prisoner’s offense level to account for the statutory minimum, the district court never looked back at the offense level of 29 and range of 140 to 175 months that resulted from the crack-cocaine guidelines. Accordingly, the drug tables had no apparent impact on Prisoner’s sentence, and he was not sentenced “based on” an amended guidelines range, apart from the original determina *530 tion of the pre-departure range based on the pre-FSA statutory minimum — the issue that Hammond resolves against him.
The analysis of the concurrence is also unfortunately foreclosed by binding precedent. After the departure, the district court in no way referred to or relied on portions of the Guidelines affected by the FSA. Therefore, under Justice Sotoma-yor’s controlling approach from Freeman, the “based on” requirement was not satisfied. See Freeman v. United States, — U.S. -, 131 S.Ct. 2685, 2695, 180 L.Ed.2d 519 (2011) (Sotomayor, J., concurring); see also United States v. Thompson, 714 F.3d 946, 949 (6th Cir.2013) (“Justice Sotomayor’s concurrence constitutes the applicable holding....”). As we said in Thompson, “[c]ertainly, the district court based Thompson’s sentence on some part of the guidelines; the issue ... is whether such sentence was based on the crack cocaine guidelines and whether Amendment 750 would have the effect of lowering his applicable guideline range.” 714 F.3d at 949. The concurrence suggests that after the departure in Prisoner’s case, the district court “impose[d] a sentence based on his otherwise-applicable guidelines range.” Supra, at 528. But, as described above, his otherwise-applicable guidelines range was 140 to 175 months, and the district court used a range of 130 to 162 months to determine Prisoner’s sentence. The range that the district court used was disconnected from the crack-cocaine guidelines, so Prisoner’s sentence was not “based on” a guidelines range that has been amended.